**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIE ALVIN HICKMAN** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION 08-0159-B** |
| | * | |
| **MICHAEL J. ASTRUE,** | * | |
| **Commissioner of** | * | |
| **Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

Plaintiff Willie Alvin Hickman ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for period of disability and disability income benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 416 et seq. On May 14, 2009, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 16). Thus, the case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636© and Fed. R. Civ. P. 73. (Doc. 17). Oral argument was held on May 14, 2009. Upon consideration of the administrative record, the oral arguments and memoranda of the parties, it is ORDERED that the decision of the Commissioner be **AFFIRMED.**

1

I.   **Procedural History**

Plaintiff filed an application for disability benefits on November 7, 2005. (Tr. 58-60). Plaintiff alleges disability as of September 17, 2004 due to problems with his back, shoulders, knees, left hand and eyes. (Tr. 72-73). Plaintiff's earnings record shows that he has sufficient quarters of coverage to remain insured through December 31, 2004, and was insured through that date. (Tr. 44, 63-66). Plaintiff's application was initially denied on February 8, 2006 (Tr. 43-44). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 50). On July 26, 2007, ALJ Glay Maggard ("ALJ Maggard") held an administrative hearing which was attended by the Plaintiff and his attorney. (Tr. 169-182). On August 17, 2007, ALJ Maggard issued an unfavorable decision. (Tr. 20-28). Plaintiff appealed the decision, and on February 5, 2008, the Appeals Counsel ("AC") denied Plaintiff's request for review. Thus, the ALJ's decision became final. (Tr. 6-8). The parties agree that this action is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

II.  **Issues on Appeal**

A.   Whether the ALJ erred in finding that Plaintiff had no severe impairments.

B.   Whether the ALJ erred in assigning weight to the unsigned opinion of a State Agency physician.

C.   Whether the ALJ erred in failing to assign controlling weight to the opinion of Plaintiff's treating physician, Gregory

Evans, M.D.

## III. **Background Facts**

Plaintiff was born on December 26, 1941 and was 55 years old at the time of the administrative hearing (Tr. 43, 58, 69, 100, 169). He has a sixth-grade education, and past relevant work experience ("PRW") as a brick mason and construction worker. (Tr. 73-74, 77, 79-85, 100, 103-104). At the July 26, 2007 hearing, Plaintiff testified that he was terminated from his brick masonry jobs because he could not see well enough to work, and due to back problems. (Tr. 174-177). According to Plaintiff, he laid bricks for 50 years, and as a result, his "back cartilage is bone rubbing bones." (Tr. 176). Plaintiff also testified that he only has one eye because of glaucoma, that he has had surgery on his eye, and that his eye is getting worse. (Tr. 177-178). Plaintiff further testified that he is unable to get out of bed some days, and other days, he can walk four or five blocks. (Tr. 174). Plaintiff testified that he is able to care for his personal needs and do housework, and that he does not drive because his licence was suspended due to unpaid tickets. (Tr. 179-180).

### **Analysis**

### A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

3

evidence and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[1]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In the case <u>sub judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits, and was insured for benefits through

───────────────

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id.</u> at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

on December 31, 2004[3].  (Tr. 23, 25).   ALJ Maggard concluded that while Plaintiff has the medically determinable impairment of glaucoma, he does not have a severe impairment or combination of impairments and so is not disabled.  (Tr. 25-28).

The relevant medical evidence of record[4] includes the results of a lumbosacral spine x-ray on November 9, 1998, which showed "fairly marked" narrowing at the L2-L3, L3-L4, L4-L5 and L5-S1 levels with some arthritic changes, but no osseous erosion or destruction, and no soft tissue lesions.  (Tr. 166).

Treatment notes from Mobile County Health Department ("MCHD") dated August 17, 2004 reflect that Plaintiff reported pink eye and lower back and right shoulder pain.  On physical exam, Dr. Walker observed that Plaintiff's left eye was red/infected (pink eye).  He further noted painful draining, and reduced vision.  Plaintiff's physical exam was otherwise normal. Dr. Walker diagnosed Plaintiff

---

[3]The ALJ's decision actually provided two different last insured dates.  Twice in the opinion, the ALJ stated that Plaintiff is insured through June 30, 2005; however, he later lists Plaintiff's last insured date as December 31, 2004. (Tr. 23, 25, 28), Plaintiff's earnings record and other record evidence establishes that December 31, 2004 is the correct last insured date.  (Tr. 44, 63-65).

[4]The period of consideration ends on December 31, 2004, and the issues raised by Plaintiff on appeal relate to the severity of Plaintiff's glaucoma and degenerative disc disease.  Thus, while the entire transcript has been reviewed, only the evidence of record related to Plaintiff's period of consideration, and related to Plaintiff's alleged glaucoma and degenerative disc disease is addressed herein.

with conjunctivitis[5] verus angle closure glaucoma, and encouraged Plaintiff to seek immediate treatment at an emergency room; however, there is nothing in the record which indicates that Plaintiff did so.  (Tr. 134-134A, 159-160).

The record evidence reflects that Plaintiff was treated at the Franklin Primary Health Center, Inc. ("Franklin") on January 17, 2005.  Plaintiff reported glaucoma, back, right shoulder and left arm pain, and thyroid problems.  His physical exam revealed ophthalmology with no lesions, goiter in his neck, and arm and shoulder boney protrusions.  (Tr. 144-145).  Plaintiff returned to Franklin on February 16, 2005, and reported bilateral leg, back, right shoulder and left arm pain.  He also reported that he was not experiencing any pain at that point.  On physical exam, Plaintiff had tenderness on palpation in the center of his back.  He was diagnosed with low back pain.  (Tr. 142-143).

Plaintiff was treated at the Eye Center South and American Surgery Center on November 2, 2005.  He was diagnosed with advanced chronic angle closure glaucoma ("CACG") in his left eye, narrow angles in both eyes, cataracts in both eyes and old K-scarring in his left eye.  He underwent a YAG peripheral iridotomy on both

---

[5]Conjunctivitis or "pink eye" is redness and inflammation of the membranes (conjuntiva) covering the whites of the eyes and the membranes on the inner part of the eyelids. www.medicinenet.com (Last visited September 17, 2009).

eyes[6].  (Tr. 148-153, 156-157).  An unsigned  Medical Report of a
Visual Examination dated December 23, 2005 reflects that Plaintiff
underwent a vision examination at Bay Eyes on November 17, 2005,
and that his left eye vision measured 20/400 uncorrected and 20/60
with glasses.  The report also reflects that Plaintiff has normal
muscle function, has useful binocular vision for "distance" and
"near" in all directions with glasses, and that he has depth
perception.  Plaintiff's intraocular tension was 21 on the right
and 28 on the left, and his fundus examination indicated a poor
view in his right eye due to a small pupil, and thinned optic nerve
rim on the left side.  Plaintiff was diagnosed with narrow angle
glaucoma, and nuclear sclerosis with status post YAG[7] in both eyes.
His condition is noted as stable, and it is observed that Plaintiff
has no ocular disability.  (Tr. 119-120).

Plaintiff was seen by Gregory Evans, M.D., at MCHD, on April
12, 2006.  Plaintiff reported problems with his eye, and chronic
back and left arm pain.  Lumbosacral tenderness was noted on the
physical exam.  (Tr. 133).  The results of a spinal x-ray on April
13, 2006 showed severe degenerative change and disc disease at L2-
S1.  (Tr. 138).  The treatment notes reflect that on a follow-up

---

[6]YAG iridotomy is a laser incision of the iris.  <u>See</u>,
<u>www.nil.nih.gov.</u>  (Last visited May 11, 2009).

[7]A procedure in which a laser is used to cut a hole in the
black clouded lens capsule that commonly forms after cataract
surgery.  See, <u>www.WebMD.com.</u>  (Last visited April 24, 2009).

visit on June 14, 2006, Plaintiff's physical exam was noted as "good,". Plaintiff was diagnosed with glaucoma and referred for evaluation. He was also diagnosed with degenerative joint disease and prescribed Anaprox[8], Celebrex and Darvocet. (Tr. 132-132A).

Plaintiff was seen by Dr. Evans on October 31, 2006. He requested testing for prostate problems. Plaintiff's physical exam was normal, and his one symptom was chronic lumbosacral spinal tenderness. He was diagnosed with glaucoma, prostate disorders, arthropathy and backache, and was prescribed Robaxin[9]. His other medications were listed as Celebrex, Darvocet, Alphagan[10], Travatan[11] and Dorzolamide[12]. (Tr. 129-131).

Dr. Evans completed a Physical Capacities Evaluation form on October 31, 2006. He diagnosed Plaintiff with degenerative severe arthritis, and opined that Plaintiff is limited to sitting two hours and standing/walking less than one hour at a time, and

_____

[8]Anaprox is a non-steroidal anti-inflammatory drug. See, www.drugs.com. (Last visited May 11, 2009).

[9]Robaxin is a muscle relaxer. See, www.drugs.com. (Last visited May 11, 2009).

[10]Alphagan is used to treat open-angle glaucoma and high blood pressure. See, www.drugs.com. (Last visited May 11, 2009).

[11]Travatan is used to reduce pressure in the eye and to treat open-angle glaucoma. See, www.drugs.com. (Last visited May 11, 2009).

[12]Dorzolamide is used to reduce pressure in the eye and to treat open-angle glaucoma. See, www.drugs.com. (Last visited May 11, 2009).

sitting six hours and standing/walking less than one hour total during an eight-hour workday. Dr. Evans also opined that Plaintiff is limited to lifting/carrying up to five pounds continuously and up to ten pounds occasionally, and never lifting/carrying more than ten pounds. He further opined that Plaintiff can perform unlimited repetitive actions with his hands  and feet, and can occasionally bend, squat, crawl, climb and reach. In addition, Dr. Evans opined that Plaintiff is mildly restricted from activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity and exposure to dust, fumes and gases, and is totally restricted from activities involving driving automobile equipment. (Tr. 125). On a Clinical Assessment of Pain form, Dr. Evans opined that Plaintiff's pain is present to such an extent as to be distracting to the adequate performance of work activities, and that his medications do not have any significant effect upon his ability to work. (Tr. 126).

Plaintiff was next seen by Dr. Evans on January 16, 2007. Plaintiff's physical exam was normal except for pain localized to one or more joints in his lumbosacral spine. Plaintiff was diagnosed with glaucoma, arthropathy, and backache  and was prescribed Flexeril, Celebrex, and Darvocet. (Tr. 127-128).

### A. Whether the ALJ erred in finding that Plaintiff had no severe impairments.

Plaintiff argues that the ALJ erred in finding that

10

Plaintiff's glaucoma, combined with his degenerative arthritis, is not a severe impairment pursuant to 20 C.F.R. 404.1521. According to Plaintiff, the ALJ is required, under SSR 85-28, to consider the combined impact of Plaintiff's impairments on his ability to function, and is also required, pursuant to SSR 96-3p, to consider any limitations and restrictions in functioning in determining whether Plaintiff's impairments are severe. (Doc. 11 at 3).

The Commissioner argues that Plaintiff has failed to show he was disabled prior to the expiration of his insured status. The Commissioner notes that Plaintiff's first complaint of problems with his left eye was in August 2004, and that he did not seek additional treatment until September 2005, which was after his insured status had expired. The Commissioner further argues that Plaintiff has failed to show that his arthritis was disabling prior to the expiration of his insured status. According to the Commissioner, the record shows that Plaintiff first complained of lower back and shoulder pain in August 2004, one month prior to his alleged onset date, and that Plaintiff did not seek subsequent treatment until January 2005, which was after the expiration of his insured status. (Doc. 12 at 4-5).

In finding that Plaintiff had no severe impairments, the ALJ stated the following:

> Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore,

the claimant did not have a severe impairment or
combination of impairments (20 C.F.R. 404.1521). . . .

[T]he claimant has not met the burden of proof at step 2
of the sequential evaluation to establish that a
medically determinable impairment significantly limited
his ability to perform work-related activity for a
continuous period of at least 12 months during the period
of adjudication.

(Tr. 25, 28).

Substantial evidence support the ALJ's decision.  At the
second step of the sequential evaluation process, the ALJ is to
"consider the medical severity of [the claimant's] impairment(s)."
20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one which
"significantly limits your physical or mental ability to do basic
work activities."  20 C.F.R. § 404.1520( c).  The Eleventh Circuit
has held that a claimant's impairment may be considered "not
severe" only if it is a slight abnormality which has such a minimal
effect on he or she, that it is not expected to interfere with the
ability to work, regardless of age, education or work experience.
See, e.g., Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984).
In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh
Circuit clarified the severity determination:

[a]t step two of § 404.1520 and § 416.920 a claimant's
impairment is determined to be either severe or not
severe.  Step two is a threshold inquiry. It allows only
claims based on the most trivial impairments to be
rejected. The claimant's burden at step two is mild. An
impairment is not severe only if the abnormality is so
slight and its effect so minimal that it would clearly
not be expected to interfere with the individual's
ability to work, irrespective of age, education or work

12

experience. Claimant need show only that her impairment
is not so slight and its effect is not so minimal.

Id. at 1031.   If an impairment causes only mild effects on a
claimant's ability to work, or is amenable to medical treatment, it
may be not severe.   See Bridges v. Bowen, 815 F.2d 622, 625 (11th
Cir. 1987).   Thus, a claimant bears the burden of proving that an
impairment is severe and more than a mere slight abnormality.
Brady, 724 F.2d at 920.[13]

In this case, Plaintiff has failed to meet his burden of
proving a severe impairment.   In August of 2004, which is one month
prior to Plaintiff's alleged onset date, Plaintiff sought treatment
at MCHD for pink eye.   Although Plaintiff was encouraged to seek
immediate treatment from the emergency room, there is no evidence
that Plaintiff sought any additional treatment until November of
2005, which is nearly a year after he was last insured.   At that
point, Plaintiff was diagnosed with "advanced" chronic angle
closure glaucoma, and underwent a YAG peripheral iridotomy on both
eyes.   The record reflects that by December 2005,  Plaintiff's
best corrected vision in the left eye was 20/60 and right eye was
20/20. (Tr. 119-120).   It was also noted that Plaintiff had
"useful" binocular vision for distance and near in all directions
and depth perception.   It was further noted that Plaintiff he had

---

[13]See also SSR 96-3p Titles II and XVI: Considering
Allegations of Pain and Other Symptoms in Determining Whether a
Medically Determinable Impairment Is Severe,1996 WL 374181, *1-2.

"no ocular disability." (<u>Id</u>.)

     With respect to Plaintiff's arthritis, the record contains a report of a spinal x-ray dated in November of 1998, almost six years prior to the relevant time period. The report reflects that Plaintiff had "fairly marked" narrowing at the L2-L3, L3-L4, L4-L5 and L5-S1 levels, but no osseous erosion or destruction, and no soft tissue lesions.  (Tr. 166).   The next treatment records referencing Plaintiff's back pain are dated January of 2005, nearly a month after the expiration of Plaintiff's insured status.  When Plaintiff sought treatment in 2005, he reported that he was unable to work due to glaucoma, thyroid problems and back, hand and arm pain.  Plaintiff's physical examination revealed ophthalmology with no legions, goiter in the neck, and arm and shoulder boney protrusions. (Tr. 144). While Plaintiff saw Dr. Evans, at MCHD, in 2006 for chronic back and left arm pain, Dr. Evans' treatment notes do not shed any light on Plaintiff's condition prior to the expiration of his insured status.  (Tr. 129-188, 138).

     Plaintiff has not carried his burden of proving that the ALJ erred in finding that Plaintiff did not have any severe impairments during the period in question.  First of all, Plaintiff's record of treatment for glaucoma and degenerative arthritis during the period in question is dearth at best.  Moreover, the records which do exist for the relevant time period, and the periods in close proximity thereto, are devoid any evidence that Plaintiff's

impairments caused any limitations on his ability to do basic work activities.  In the absence of such evidence, the ALJ did not err in finding that Plaintiff did not have any severe impairments which resulted in significant work-related limitations for a continuous period of 12 months during the period in question.

**B.  Whether the ALJ erred in assigning weight to an unsigned medical statement.**

Plaintiff argues that the ALJ erred in assigning weight to the December 23, 2005 Medical Report of visual examination because it was unsigned.  (Doc. 11 at6-7, Tr. 119-120).  According to Plaintiff, any weight assigned to that opinion is error pursuant to 20 C.F.R. § 404.1519n(e), which requires that consultative examination reports be signed.  The Commissioner argues that the visual examination was conducted by Bay Eyes Vision Cataract and Laser Center, which Plaintiff identified as a treating medical source in his Disability Report.  Thus, no signature was required.  (Doc. 12 at 7-8, Tr. 75).  The Commissioner further asserts that any error based the ALJ's reliance on the unsigned visual examination report is harmless because Plaintiff does not question the accuracy of the report.  (Id.)

While Plaintiff is correct that the medical report is unsigned, he does not dispute that the report is based on a vision examination that was performed at Bay Eyes Vision Cataract and Laser Center in November 2005, nor does he contend that the report contains information that is either inaccurate or incorrect.  Based

15

upon the record evidence, the undersigned finds that to the extent the ALJ erred in relying on the unsigned report, it was harmless error as it would not have changed the ALJ's decision. As noted supra, the record is totally devoid any evidence that establishes that during the period in which Plaintiff was insured, his glaucoma caused any limitations on his ability to do basic work activities. Accordingly, any error in relying on the medical report dated December 23, 2005, nearly a year after the period of consideration, is harmless. See, Newsome v. Barnhart, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006)("[T]o the extent the ALJ erred in failing to make an explicit determination that Plaintiff's secondary diagnosis of ODD constituted a severe impairment at step two of the sequential evaluation—the error was harmless. '[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.' ")(citations omitted).

**C.   Whether the ALJ erred in failing to assign controlling weight to the opinion of Plaintiff's treating physician, Dr. Gregory Evans, M.D.**

Plaintiff argues that the ALJ erred in failing to assign controlling weight to the opinion of Dr. Evans, Plaintiff's treating physician. According to Plaintiff, Dr. Evans' opinion is well-supported and is not inconsistent with other substantial evidence of record. (Doc. 11 at 7-8). The Commissioner argues that the ALJ correctly assigned no weight to Dr. Evans's opinion because

Dr. Evans did not treat Plaintiff until April 2006, almost 18 months after the period of consideration.   (Doc. 12 at 8).

In determining what weight to assign Dr. Evans's opinion, the ALJ stated as follows:

> [T]he undersigned has considered the opinions of Dr. Evans . . . but finds no additional documentary evidence to corroborate his assessment of the claimant's limitations during the relevant time period.   Although Dr. Evans completed a physical capacities evaluation and clinical assessment of pain form with the notation, "Please base your assessment on period of time prior to December 31, 2004," the undersigned finds no evidence that Dr. Evans ever treated or evaluated the claimant prior to April 2006. . . . While the undersigned acknowledges the likelihood that the claimant had some degree of lumbar degenerative arthritis as of his date last insured, there is simply no evidentiary basis upon which to infer that it was "severe" at that time.

(Tr. 27-28).

The ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating  physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440. Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)(per curiam).

17

The record reflects that the ALJ stated with sufficient specificity that he was according no weight to Dr. Evans' opinion that Plaintiff is disabled due to severe degenerative arthritis because his opinion did not relate to Plaintiff's limitations during the relevant time period.  As noted by the ALJ, the record is devoid of any evidence that Dr. Evans ever treated Plaintiff prior to April 2006.  Further, while it is likely that Plaintiff experienced some degree of lumbar degenerative arthritis as of the date he was last insured, there is simply no evidence which suggests Plaintiff was significantly limited in his work activities as a result.  Indeed, in the form completed by Dr. Evans, he was specifically requested to base his assessment of Plaintiff's condition on the period of time "prior to December 2004." Notwithstanding, there is nothing in Dr. Evans' treatment records, nor in his October 31, 2006 assessment that sheds any light on Plaintiff's condition for the period prior to April 2006, when Plaintiff was initially seen by Dr. Evans.  Accordingly, the ALJ did not err in according no weight to Dr. Evans' opinion.

### V.   Conclusion

For the reasons set forth, and upon consideration of the administrative record, oral arguments and memoranda of the parties, the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability and disability income benefits is **AFFIRMED**.

18

**DONE** this **18th** day of **September, 2009.**

              /s/ SONJA F. BIVINS
       UNITED STATES MAGISTRATE JUDGE